IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                       No: 11-CR-2994 WJ

BRANDON L. JONES,

    Defendant.

## MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND OVERRULUNG IN PART DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT

THIS MATTER comes before the Court following a sentencing hearing on August 2, 2017, regarding Defendant Brandon L. Jones' Objections to Fourth Addendum to Presentencing Report and Sentencing Memorandum in Support of a Downward Departure, filed June 18, 2017 (**Doc. 266**).[1] Having reviewed the pleadings, and heard the testimony and arguments of counsel, the Court **SUSTAINS in part** and **OVERRULES in part**[2] Defendant's objections to the Presentence Report (PSR).

### BACKGROUND

Given the voluminous filings to date, the Court assumes the parties' familiarity with the facts underlying this action. However, the Court highlights relevant procedural developments. On December 1, 2015, Defendant filed an Amended Motion To Vacate, Set Aside or Correct

---

[1] At the hearing, the Court heard arguments on Defendant's objections to the presentence report, but did not hear arguments on Defendant's request for a downward variance. The parties and the Court agreed that the best course of action would be for the Court to issue its ruling on Defendant's correctly-calculated Guidelines sentence, and to set a hearing regarding the downward variance for a later time.

[2] In a separate Memorandum Opinion and Order filed on August 29, 2017 (Doc. 281), the Court overruled Defendant's objection to paragraph 54 of the PSR. *See generally* Doc. 281.

Sentence[3] Pursuant to 28 U.S.C. § 2255 (Doc. 214), which was based on ineffective assistance of counsel in failing to file an appeal by Defendant's prior counsel of record. On January 18, 2017, the Court ordered the Motion be granted, and set for resentencing.[4] Based on this decision, the United States Probation Office subsequently filed Third, Fourth, and Fifth Addenda to the PSR. The United States Probation Office maintains that Defendant's offense level is 38, which combined with a criminal history category of III, establishes a guideline imprisonment range of 292 months to 365 months. The Government agrees with the United States Probation Office's revised guidelines calculation. Defendant does not take issue with Probation's determination that Defendant's criminal history category is III; however, Defendant objects to Probation's determination that Defendant's offense level is 38 and argues that Defendant's offense level instead should be 33 although the Court believes Defense counsel meant to say Defendant's offense level should be level 32 because Defendant objects to the two level increase for victim injury in paragraph 33 of the PSR, objects to the two level increase for obstruction in paragraph 36 and objects to Defendant not receiving a two level decrease for acceptance of responsibility in paragraph 38. Thus, the Court understands Defendant to be arguing that his adjusted offense level should be six levels lower from Probation's calculation of offense level 38. Stated another way, Defendant argues that his correctly calculated sentencing guideline range to be offense level 32, criminal history category III which would result in a guideline sentencing incarceration range of 151 to 188 months[5].

---

[3] Defendant plead guilty to Kidnapping, 18 U.S.C. § 1201(a)(1), and Aiding and Abetting, 18 U.S.C. § 2, on December 28, 2012. On May 5, 2014, Defendant was sentenced to 420 months' imprisonment. Doc. 159.

[4] As the Court addresses in more detail below, the Tenth Circuit Court of Appeals reversed this Court's finding that Co-Defendant Jesus Manuel Gallegos caused the victim to suffer a "permanent bodily injury" under U.S.S.G. § 2A4.1. The Tenth Circuit vacated Gallegos' original sentence of 360 months' imprisonment and remanded for a new sentencing. *See United States of America v. Jesus Manuel Gallegos*, Tenth Circuit No. 14-2081 (May 19, 2015). This same issue is present in the instant case.

[5] The Court has discovered a mistake in Defendant's PSR with a re-disclosure date of January 22, 2014. This PSR has two paragraphs numbered 31. The first paragraph 32 on page 8 of the PSR states Defendant's base offense level

On June 18, 2017, Defendant filed a Sentencing Memorandum. Doc. 266. The Government filed a response on June 26, 2017. Doc. 270. The Court held a hearing on August 2, 2017, to address Defendant's objections to the PSR.

## DISCUSSION

I. **Defendant's Objections to Information in the PSR**

Before turning to Defendant's objections to the guidelines sentencing range as set forth in the PSR, the Court addresses Defendant's objections to some of the language contained in the PSR. For the reasons that follow, the Court sustains Defendant's objection to paragraph 17 of the PSR, and certain language in that paragraph will be stricken. The Court has already overruled Defendant's objection to paragraph 54. *See* Order Reversing Court's Prior Ruling Regarding Paragraph 54 of the Presentence Report (Doc. 281) which the Court incorporates by reference herein.

A. Threat of Rape

Paragraph 17 of the PSR establishes that after Defendant and his Co-Defendant, Jesus Manuel Gallegos, kidnapped victim Javier Carlos Vasquez, Defendant "told Mr. Vasquez he should just shoot him, or maybe rape him." At the August 2, 2017 hearing, defense counsel explained that the reference to a threat of rape has significantly impeded Defendant's rehabilitation efforts. Defendant is essentially being treated as a sexual offender despite the uncontroverted fact that he has never been found guilty for any sexual offense. Moreover, the victim in this case did not mention the alleged threat of rape in his victim impact statement. *See* Doc. 183. Defendant likens his situation to that in *Brown v. Montoya*, 662 F.3d 1152, 1157–58 (10th Cir. 2011), where the defendant alleged he was wrongly directed to register as sex offender

---

for the offense of kidnapping is offense level 32 and there are no objections to this first paragraph 32. The second paragraph 32 on page 8 assigns a two level increase for use of a dangerous weapon in the offense and there are no objections to this second paragraph 32.

and placed in sex offender probation unit. The Tenth Circuit held the defendant could sustain certain constitutional claims based on his erroneous classification as a sex offender. *See id.* at 1170–72. Defendant argues that as in *Brown*, he has been improperly labeled as a sexual predator by the Bureau of Prisons due to the language in the PSR, which affects the way he is classified in federal custody. He is limited to where he can be placed, and he is housed with inmates who actually have committed sexual offenses. He has also received repeated threats to his life based on the assumption that he is a sexual offender.

The Government argues in response that although Defendant has never been charged with any sexual crime, it is also true that Defendant did threaten to rape the victim, and the threat is a necessary part of the record. The Government maintains that to strike the statement from the PSR would be to eliminate a fact underlying this case, which should not be done simply because the consequences have been inconvenient for Defendant's period of incarceration.

The Court agrees with Defendant that the language regarding the threat of rape should be stricken from the PSR because it has caused Defendant significant hardships during his incarceration. Defendant has no history of sexual offenses or any noted propensity to commit sexual offenses. The Court is sensitive to the trauma the victim faced during the course of the kidnapping and beating, but the Court does understand why Defendant's alleged statement that "maybe [he should] rape him" needs to be removed from the PSR, particularly because it is causing Defendant issues in terms of classifying him as a sexual criminal, when he should not be. Defendant is guilty of the crimes of kidnapping and aiding and abetting and during the course of the kidnapping the victim was beaten. Accordingly, the Federal Bureau of Prisons ("BOP") should classify Defendant consistent with inmates who have been found guilty of similar violent crimes and attempted escapes; however, Defendant should not be classified by the BOP as a sex

offender. Therefore, the Court sustains Defendant's objection to certain language in paragraph 17 of the PSR.

### B. Alleged Escape Attempt from Santa Fe County Correctional Facility

Second, Defendant objects to paragraph 54 of the PSR, which references Defendant's alleged attempted escape from the Santa Fe County, New Mexico, Correctional Facility. The Court addressed this objection in a separate Memorandum Opinion and Order (Doc. 281), and will not repeat the discussion here other than to note that the Court found there was a preponderance of the evidence showing Defendant attempted to escape from the Santa Fe County facility on June 25, 2013. Accordingly, the Court overruled Defendant's objection to paragraph 54 of the PSR. *See generally* Doc. 281.

## II. Defendant's Objections to Guidelines Calculation

The parties do not dispute Defendant's base offense level of 32, nor do they dispute paragraphs 32, 34, or 35 of the PSR. The Fifth Addendum to the PSR notes the four-level enhancement for the restraint of the victim contained in paragraph 33 of the PSR should not apply, and the government does not object. *See* Doc. 273 at 2–3. At the August 2, 2017 hearing, counsel for both parties stated that they agree with this aspect of the Fifth Addendum. The Addendum notes, and the parties agree, the unlawful restraint of a victim is already an element of the offense of conviction and is already taken into account, so to add four levels would constitute impermissible double-counting. Since the parties agree this enhancement should not apply, the Court sustains Defendant's objection to the restraint enhancement and need not address it any further.

At issue before the Court are paragraphs 33, 36, and 38 of the PSR. Specifically, Defendant objects to the two-level increase for "serious bodily injury," the two-level increase for

5

obstruction of justice, and the PSR's conclusion that Defendant has not demonstrated acceptance of responsibility for the instant offense. The Court addresses each in turn.

### A. Serious Bodily Injury Adjustment

First, Defendant states the Fifth Addendum to the PSR erroneously categorizes the victim, Mr. Vasquez's, eye injury as a "serious bodily injury" and adds two points pursuant to U.S.S.G. §2A4.1(b)(2)(B). *See* Doc. 273 at 2. Defendant contends that Mr. Vasquez's sensitivity to bright light does not constitute a serious bodily injury because it is only a problem when he is outside in the sun and the sensitivity can be remedied with sunglasses.[6] Dr. Robert Avery, an ophthalmologist and Medical Director of the University of New Mexico School of Medicine Eye Clinic, testified at length at the initial sentencing hearing. He examined Mr. Vasquez's eyes and concluded that although his vision is the same as before the kidnapping and beating, his left eye no longer constructs to the same amount of light as well as his right eye does, so his left eye is unable to protect itself from receiving too much light. *See* Doc. 183 at 6–7; 13. Dr. Avery stated he did not expect the injury to ever go away, but that it is a relatively common injury following eye trauma.

Defendant claims that the case law governing the "serious bodily injury" adjustment requires the injury at issue to be much more severe than a mere sensitivity to light. In support of this contention, Defendant cites *United States v. Perkins*, 132 F.3d 1324, 1326 (10th Cir. 1997), where the Tenth Circuit affirmed the district court's finding that a victim suffered a "bodily injury" pursuant to U.S.S.G. § 2B3.1(b)(3) when he sustained a small laceration with bruising, but did not classify the injury as a "serious bodily injury." Defendant argues that the lacerations and bruising suffered by the victim in *Perkins* were more serious that Mr. Vasquez's injury in

---

[6] Defendant incorporates by reference the testimony and evidence presented at the initial sentencing hearing on May 5, 2014. At that hearing, the Government presented Dr. Robert Avery who examined the victim's eyes. Dr. Avery's testimony forms the basis for the conclusion that the victim suffered a serious bodily injury due to his eye issues.

6

this case, but in *Perkins* those injuries were only enough to sustain a "bodily injury" enhancement.

The Government responds that the proper query is whether, after a full period of healing, the eye does not function as a typical eye would function. In this case, the fact that the victim's symptoms consist only of sensitivity to light is not the crux of the issue. Instead, what matters is the victim's eye has already reached maximum medical improvement, meaning it is not expected to recover beyond its current state.

At the August 2, 2017 hearing, the Court stated that due to the Tenth Circuit's decision in *United States v. Jesus Gallegos*, Tenth Circuit No. 14-2081, (May 19, 2015), the four-level enhancement for "permanent bodily injury" clearly cannot apply in this case for Defendant Jones. The parties do not dispute this point, but the Court takes a moment to briefly address the Tenth Circuit's decision in *Gallegos*, which determined the injury to the victim's eye was not a "permanent bodily injury" pursuant to U.S.S.G. § 2A4.1 warranting a four-level enhancement for Co-Defendant Gallegos. After the initial sentencing in this matter, Gallegos and Jones each received the four-level enhancement for "permanent bodily injury." Gallegos appealed to the Tenth Circuit, and the court held it was unclear whether this Court applied the correct definition of permanent bodily injury. *Id.* at 9–10. The Tenth Circuit explained that the Court's "discussion blurred the lines between the definitions of 'permanent or life-threatening bodily injury' and 'serious bodily injury.' The terms 'permanent' and 'protracted' are not interchangeable, and the longevity of an impairment is one crucial distinction between a serious bodily injury enhancement and a permanent bodily injury enhancement." *Id.* at 9. The Tenth Circuit specifically noted that "the serious bodily injury enhancement has no severity requirement," unlike the permanent bodily injury adjustment. *See id.* (quoting U.S.S.G. § 1B1.1

7

cmt. 1(J), 1(L)). The Tenth Circuit concluded that it would offer "no opinion on the merits of which enhancement is most appropriate in this case;" rather, its sole focus was on "the district court's failure to distinguish between the requirements for a two-level sentencing enhancement and a four-level sentencing enhancement." *Id.* at 11.

The Court finds that the Government has established by a preponderance of the evidence that the victim suffered a "serious bodily injury" during the commission of the offense, pursuant to U.S.S.G. § 2A4.1(b)(2)(B), and therefore a two-level increase to Defendant's offense level is warranted. "Serious bodily injury" is defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization or physical rehabilitation." U.S.S.G. § 1B1.1. After the Defendants kidnapped, beat, and choked Mr. Vasquez with a seatbelt, they tied him up with duct tape and gouged his left eye.[7] As was addressed in great detail at the original sentencing, Mr. Vasquez experiences ongoing problems related to the trauma to his left eye. The Court finds that the Government has met its burden of showing by a preponderance of the evidence that Mr. Vasquez suffered a "serious bodily injury" as defined by U.S.S.G. § 1B1.1. Dr. Avery was a very credible witness and he testified at length as to the injury to the eye and explained how the victim suffers protracted impairment of his left eye because the eye is permanently dilated more than normal, which cannot be reversed. Mr. Vasquez's injury may not be as severe as others warranting the two-level increase for serious bodily injury, but there is ample evidence in the record that his left eye does not function as it previously functioned and

---

[7] At the original sentencing hearing, Mr. Vasquez provided a victim impact statement. Mr. Vasquez explained that the kidnapping and beating was "the longest night of his life." Doc. 183 at 39:4. He was beaten and hit repeatedly by Defendant. *Id.* at 39:14–25. He elaborated that he was taken to various ATMs to withdraw money, and if he did not cooperate in the right way, he was met with assault. *Id.* Mr. Vasquez continued, "I was strangled at some point with my seat belt. At one point, one of the two men was choking me and essentially gouging my eye. I remember the experience in a way very bitterly and at the same time very vaguely. It was—it was a very painful thing." *Id.* at 39:20–25.

the injury is protracted. As the Tenth Circuit noted in *Gallegos*, the serious bodily injury enhancement contains no severity requirement. Even if the Court did not consider Mr. Vasquez's protracted eye injury, the Court would still have found Mr. Vasquez suffered a serious bodily injury because there is evidence showing he experienced "extreme physical pain" during the course of the kidnapping. *See* U.S.S.G. § 1B1.1, Application Note 1(L). Although neither party addressed the "extreme physical pain" portion of the serious bodily injury definition, Mr. Vasquez stated that it was "very painful" when Defendant and his Co-Defendant beat, hit, strangled, chocked, and eye-gouged him. *See* Doc. 183 at 39:20–25. The Court can easily envision that such circumstances would have been "extremely painful" for Mr. Vasquez to endure. hus, the Government has met its burden to show Defendant's offense level should be increased by two points based on the serious bodily injury suffered by Mr. Vasquez.

    B. <u>Obstruction of Justice Adjustment</u>

Next, Defendant objects to the PSR adding two levels pursuant to U.S.S.G. § 3C1.1, for conduct that obstructs the administration of justice. The PSR states that a two level increase to the offense level is warranted because on November 1, 2012, while in federal custody for the instant offense, Defendant attempted to escape from the Torrance County Detention Center in Estancia, New Mexico.[8] Defendant claims there are mitigating circumstances related to his escape attempt; therefore, the two-level enhancement should not apply. He explains that right before the escape attempt, Defendant learned via a facsimile communication from his prior counsel that he was facing a sentence of up to lifetime imprisonment. This news was upsetting,

---

[8] More specifically, Charles Barth, the former AUSA assigned to this case, testified at the April 20, 2016 evidentiary hearing before Magistrate Judge Karen B. Molzen that on November 1, 2012, Defendant and another inmate at the Torrance County Detention Center climbed over a fence in what is called the "dead man's zone," wearing extra sets of clothing. *See* Tr. at 47:7–17. One of the escapees ran up to a corrections officer, tackled him, and threw his radio over the fence so the officer could not radio for assistance. *Id.* at 47:20–48:2.

as Defendant thought he would at most be facing a 10 to 20 year term based on what prior defense counsel had explained to him. This startling news from former defense counsel, together with prior trauma Defendant experienced from incarcerations in Mexican prisons, caused him to panic and attempt to flee. Defendant contends these circumstances somehow mitigate the fact that he attempted to escape from federal custody.

The Government argues Defendant's attempted escape is clearly obstructive behavior, and the Court agrees. There is no question that Defendant's attempt to escape from the Torrance County Detention Center constitutes obstructive behavior warranting the two-level increase to his base offense level. U.S.S.G. § 3C1.1, Application Note 4(E) provides that "escaping or attempting to escape from custody before trial or sentencing" is an example of conduct to which the obstruction enhancement applies. Defendant urges the Court not to apply the obstruction enhancement based on his prior experiences in Mexican prisons and the misfortune of his prior counsel faxing him a letter that indicated he would receive a lifetime sentence, but Defendant has not provided the Court with any authority that persuades the Court to take into account these circumstances in evaluating whether to apply the increase for obstruction of justice. The sentencing guidelines are what they are and attempted escape from custody before trial or sentencing is a specific example of conduct that the United States Sentencing Commission has identified in the guidelines as supporting this two level enhancement. Therefore, the Court overrules Defendant's objection to the two-level enhancement under U.S.S.G. § 3C1.1.

    C. <u>Acceptance of Responsibility Adjustment</u>

Finally, Defendant objects to the PSR's conclusion that Defendant has not demonstrated acceptance of responsibility for the instant offense. Under U.S.S.G. § 3E1.1, Application Note 4, conduct resulting in an enhancement under § 3C1.1 ordinarily indicates the defendant has not

accepted responsibility for his criminal conduct. In this case, it is undisputed that Defendant attempted to escape from the Torrance County facility. But Defendant argues there is nothing inconsistent in receiving the two-level enhancement for obstruction while at the same time receiving the benefit for acceptance of responsibility. He asserts that the timeline here is important, as he plead guilty on December 28, 2012 to kidnapping, without a plea agreement. At the time of the plea hearing, the attempted escape had already occurred. Thus, by the time he plead guilty, he accepted total responsibility for the kidnapping including the escape attempt. Defense counsel states Defendant panicked and had a lapse in judgment, but he later took full responsibility for it, so he is entitled to the adjustment for acceptance of responsibility.

The Government responds that Defendant's attempted escape from the Torrance County facility belies any argument that he has accepted full and complete responsibility for the conduct underlying this offense. The Government argues Defendant did not obstruct justice in a way that was subsequently remedied; rather, he came into federal custody, had a full chance to make arguments as to why he should not have been detained pending trial, and only then did he attempt to escape. The Government asserts this behavior is entirely inconsistent with accepting responsibility for his criminal conduct.

The Court agrees with the Government and finds that Defendant's attempted escape from federal custody indicates that he has not accepted responsibility for his criminal conduct, and Defendant is not entitled to the adjustment for acceptance under U.S.S.G. § 3E1.1. This sentencing level decrease is reserved for only those defendants who "clearly" demonstrate acceptance of responsibility for their criminal behavior. *See* § 3E1.1(a). Although U.S.S.G. § 3E1.1, Application Note 4 states that there could "be extraordinary cases in which adjustments under both §§ 3C1.1 and 3.E1.1 may apply," Defendant has not directed the Court to any such

"extraordinary" circumstances in this case. "Extraordinary cases exist when a defendant's obstructive conduct is not inconsistent with his acceptance of responsibility." *United States v. Clement*, 1997 WL 651874 (10th Cir. 1997) (quoting *United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994)). In this case, the Government has met its burden of showing by a preponderance of the evidence that Defendant's obstructive conduct is inconsistent with his acceptance of responsibility. When a defendant attempts to escape from custody, the Court has a difficult time conceiving how that defendant can be said to have "clearly" accepted responsibility for the offense. *See id.* ("The defendant must clearly demonstrate that he is no longer obstructing justice and that he is truly contrite.").

Though the cases Defendant relies upon do consider a district court utilizing the acceptance of responsibility and the obstruction adjustments at the same time, those decisions are from other jurisdictions and they are factually inapposite. None of the cases dealt with the situation here where Defendant attempted to escape from federal custody for the underlying offense, clearly indicating he did not accept responsibility for the full spectrum of his criminal conduct. *See, e.g., United States v. Bogas*, 731 F. Supp. 242, 251–52 (N.D. Ohio 1990) (defendant made false statements during the investigation of his offense but he had already cooperated with authorities so the falseness of his statements was easily ascertainable, and he continued to cooperate with authorities). Moreover, by the very terms of the sentencing guidelines, when a defendant receives an enhancement for obstruction under § 3C1.1, that defendant has indicated he has not accepted responsibility for his criminal conduct. *See id.*

It is worth noting that the government did not pursue an escape charge against Defendant based on informal negotiations between prior counsel for the government Charles Barth and prior defense counsel Kenneth Gleria. Given the benefit of hindsight, Attorneys Barth and

Gleria should have memorialized in writing their negotiations regarding the escape charge through a formal dismissal or written waiver of appeal that clearly established that the Defendant had been told and had formally approved of such an agreement, but the Court understands the government's desire to resolve the matter as expeditiously as possible given the significant caseload facing federal prosecutors in New Mexico. After the escape charge was indicted in April 2013, counsel agreed that the government would dismiss the escape charge in exchange for Defendant waiving his right to appeal his final sentence in the kidnapping case. Mr. Gleria asked Mr. Barth if the government would consider dismissing the escape case based on the length of Defendant's original sentence for the kidnapping case of 420 months. According to Mr. Gleria, Defendant accepted the offer with regard to dismissing the escape charge in exchange for willingly giving up his right to appeal the original sentence, an assertion hotly contested by the Defendant and subsequently litigated in the *habeus* case. In any event, Mr. Barth then waited to dismiss the escape charge until after the time for Defendant to appeal the final kidnapping sentence had expired. This all makes sense except for one very important omission and that is there was nothing memorialized in writing confirming this agreement and, more importantly, nothing in writing or stated on the record to establish that the Defendant had approved or accepted this agreement.

Finally, even if the Court did not consider the 2012 attempted escape from the Torrance County Correctional Facility, Defendant still would not be entitled to the acceptance of responsibility deduction because the Court has already found by a preponderance of the evidence that Defendant attempted to escape from the Santa Fe Correctional Facility on June 25, 2013. *See* Doc. 281. Defendant pleaded guilty on December 28, 2012, and the Santa Fe escape attempt happened approximately six months later. Defendant is not entitled to receive credit for

acceptance of responsibility because he engaged in conduct after his guilty plea that, without question, is inconsistent with accepting full responsibility for his criminal actions. Therefore, the Court finds that the Probation Office correctly determined in Paragraph 38 of the PSR that the Defendant is not entitled to any offense level reduction for acceptance of responsibility and his objection to Paragraph 38 is overruled.

### III. Advisory Sentencing Guideline Range

Having sustained in part and overruled in part Defendant's objections to the PSR, the Court **FINDS** that Defendant's correctly calculated guideline sentence is a total offense level of 38, combined with a criminal history category of III, resulting in an advisory sentencing guideline incarceration range of 292 to 365 months.

Finally, the Court having ruled on Defendant's objections and having made findings regarding Defendant's correctly calculated guideline sentencing range, the Courtroom Deputy Clerk shall proceed to set this case for a final sentencing hearing where the Court will consider Defendant's request for a downward variance, any request for an upward variance by the United States, final arguments of counsel and any statement the Defendant himself wishes to make.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE